IN THE UNITEDS STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Robert Lee Gilmore,
Reay Lynn Gilmore,
    Plaintiffs,

vs.                                                                   A.P. Case No.

Caliber Home Loans, Inc.,
U.S. Bank National Association
HSBC Bank USA, National Association
    Defendants.

---

In re:

    Robert Lee Gilmore, Jr.                         Case No. 13-01311
    Reay Lynn Gilmore
    64 Summer School Road
    Morgantown, WV 26508
        Debtors                                     Chapter 13

## A.P. COMPLAINT

## INTRODUCTION

This action is the result of the Defendants engaging in predatory and unlawful mortgage practices by originating a negatively amortizing loan designed to trap the homeowner Plaintiffs in a mortgage that could never be paid off. Further, Defendants' inaccurate accounting of the payment history, which the Defendants also could not justify upon Plaintiffs' request, resulted in the Plaintiffs paying the Defendants significantly more than was actually owed through the course of their Chapter 13 bankruptcy.

## PARTIES

1. The Plaintiffs and Debtors, Robert Lee Gilmore and Reay Lynn Gilmore, are residents of Monongalia County, West Virginia.

1

2. The Plaintiffs are persons who fall under the protection of Article 2 of the West Virginia Consumer Credit and Protection Act (herein "WVCCPA") and are entitled to the remedies set forth in Article 5 of the WVCCPA.

3. The Plaintiffs are persons who fall under the protection of Article 6 of the West Virginia Consumer Credit and Protection Act (herein "WVCCPA") and are entitled to the remedies set forth in Article 6 of the WVCCPA.

4. The Defendants, Caliber Home Loans, Inc. (hereinafter "Caliber"), HSBC Bank USA, National Association (hereinafter "HSBC"), and U. S. Bank National Association (hereinafter "US Bank") are corporations having their principal offices in a state other than West Virginia and which do business in West Virginia.

5. The Defendants are all subject to proscriptions against unfair and deceptive acts and practices in the conduct of trade or commerce proscribed in Article 6 of the WVCCPA.

6. Upon information and belief, Caliber is the servicer of Plaintiffs' mortgage, and US Bank is trustee for the loan.

## FACTUAL ALLEGATIONS

7. On or about October 26, 2005, the Plaintiffs entered into a mortgage Note and Deed of Trust with Beneficial of West Virginia for a mortgage loan in the amount of $167,849.13, with security given as a lien on the deed to their property at 64 Summer School Road, Morgantown, West Virginia.

8. Subsequently, the servicing rights for the Plaintiffs' mortgage has been transferred several times, with Defendant Caliber ultimately being responsible for the servicing of the mortgage today.

2

9. According to the Loan Repayment and Security Agreement (hereinafter "Note" or "the Note"), Attached as Exhibit A, "Finance Charges are computed by the simple interest month on actual unpaid balances of Principal for the time outstanding." Exhibit A, Note. p. 2.

10. The Note further states that "Payments are applied in the following order: late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance. For any past due amounts, payments will be applied to the most delinquent monthly installment first, in the same order shown above, until all past due monthly installments are paid in full."

11. Upon information and belief, Plaintiffs' mortgage is a negatively amortizing loan.

12. Upon information and belief, no document and no person notified or warned Plaintiffs at the time of closing that the Plaintiffs' mortgage loan was negatively amortizing.

13. The Plaintiffs struggled to meet the payments on their mortgage loan nearly immediately after origination, as it was very expensive for them.

14. Throughout the first few years of loan payments, often the entire balance of the Plaintiffs' mortgage payments would go to interest due to the negative amortization resulting from the structure of the loan. Often, the payment was not sufficient to pay all the negatively amortized interest, and additional interest would accrue that would have to be paid down with the next mortgage payment.

15. In or about October 2011, the Plaintiffs entered into a temporary loan modification for six months that reduced their interest rate for a time, making the loan payment more manageable.

16. The first few loan payments went to interest only under the modification, and then, in or about February of 2012, payments were being credited to the principal balance, meaning that the interest balance on the loan must be 0 due to the language of the Note. Were that not the case, then the entire balance of the payments would have gone to interest pursuant to the note language, "Payments are applied in the following order: late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance…."

17. The last payment before June of 2014 crediting any funds to the principal was in May of 2012.

18. Further, the paid-to-date and the effective date matched up on the May 21 payment, bringing the loan paid through to May 1, 2012.

19. Thereafter, a payment in July of 2012 went entirely to interest. This is also true of a payment in September of 2012 and January of 2013.

20. On June 6, 2014, a single administrative adjustment occurred with a deferred interest balance of $33,551.04.

21. On that date the loan was paid to August 1, 2012 according to the loan paperwork.

22. This means between August of 2012 and June of 2014, $33,551.04 of interest must have accrued on the loan.

23. The balance of the loan in or about or about June of 2014 was $167,623.78, and the interest rate on the Note was 8.69%

24. Given that $3,501 was paid on the interest balance in 2012 after May, upon information and belief, the interest balance between August 2012 and June 2014 should not have reached $33,551.04 at 8.69% interest per year, and in fact should have been much lower.

4

25. Upon information and belief, the Defendant either misapplied payments prior to the June 4, 2014 deferred interest entry, resulting in a higher deferred interest delinquency balance, or the Defendant failed to calculate the deferred interest balance correctly.

26. On or about November, 1, 2013, the Plaintiffs filed for Chapter 13 bankruptcy protection with this Honorable Court.

27. On or about March 20, 2014, the Plaintiffs' mortgage servicer at the time, HSBC Mortgage Services, Inc., filed a proof of claim for Plaintiffs' mortgage showing Plaintiff as 15 months delinquent on as of March 2014.

28. The proof of claim stated that the Plaintiffs were $25,874.40 in arrears over 15 months.

29. The proof of claim stated that the mortgage balance was $167,623.78 as of March 20, 2014.

30. The proof of claim stated that the total daily simple interest due as of the petition date was $12,138.76.

31. The proof of claim stated that $179,762.54 in principal and interest was due as of March of 20, 2014.

32. The proof of claim stated that $5,191.45 in pre-petition fees, expenses, and other charges existed as of March 20, 2014. This would include advances for taxes and insurance escrow that were due and owing.

33. The proof of claim stated that $25,875.40 was the amount necessary to cure the default as of the petition date.

34. Then the proof of claim stated that an additional Deferred Daily Simple Interest amount of $33,551.04 existed on the file as of March 20, 2014.

35. This means the $33,551.04 in deferred daily simple interest must have accrued between August of 2012 and March of 2014, a 19-month period.

5

36. Further, based on the Defendant's proof of claim, this $33,551.04 amount is in addition to the $25,875.40 the Plaintiffs was delinquent on payments during the 15-month period between September 2012 to November 2013.

37. Thus, according to the Defendant's March 20, 2014 proof of claim, the Plaintiffs were in arrears $59,426.41 over the period of time between when they were paid to when the proof of claim was filed March 20, 2014.

38. The amount of Defendant's claim on March 20, 2014 was $218,505.03.

39. $218,505.03 minus the principle balance of $167,623.78 equals $50,881.25.

40. 15 months of interest should only have accrued to around $20,000 at the most on the loan. 20 months of interest should only have accrued to around $26,000.

41. On or about January 29, 2020, Plaintiffs sent, by certified mail postage prepaid with return receipt requested, a qualified written request and dispute under the provisions of Real Estate Settlement Procedures Act (hereinafter "RESPA"). Each letter cost the Plaintiffs postage.

42. Upon information and belief, the Defendant incorrectly calculated the balance on the proof of claim, resulting in a windfall for the Defendant and costing the Plaintiffs a significant amount of money over the course of their Chapter 13 bankruptcy.

## CLAIMS FOR RELIEF

### COUNT I

*VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT*

43. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

6

44. The Defendants have engaged in repeated violations of Article 2 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to:

    a. generating and sending numerous documents and statements to Plaintiffs showing the incorrect balance of Plaintiffs' mortgage loan in violation of *West Virginia Code* §46A-2-127;

45. The Defendants have engaged in repeated violations of Article 4 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to:

    a. charging a finance charge in excess of the amount allowed by state law in violation of *West Virginia Code* §46A-4-107;

    b. charging and servicing a loan that does not result in a continuous monthly reduction of the original principal amount of the loan in violation of *West Virginia Code* §46A-4-109(5)(E);

46. The Defendants have engaged in repeated violations of Article 6 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to:

    a. charging the Plaintiffs for a mortgage payment in excess of amount allowed by contract and law in violation of *West Virginia Code* §46A-6-104;

47. Plaintiffs were financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

**COUNT II**

**FRAUD**

48. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

49. Upon information and belief, the Defendants misrepresented to Plaintiffs and this Court the amount of the outstanding balance on Plaintiffs' mortgage.

50. The Defendants added amounts that were not authorized by law or contract.

51. Defendants' representations and omissions were knowing, reckless, and/or intentional.

52. Defendants' misrepresentations and omissions were material.

53. Defendants intended that the Plaintiffs and this Court rely on their misrepresentations and omission by paying an amount in excess of what was owed.

54. Plaintiffs reasonably relied on each Defendant's misrepresentations during the course of the Chapter 13 bankruptcy.

55. Plaintiffs were financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

## COUNT III

### *BREACH OF CONTRACT*

56. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

57. Plaintiffs contracted with the Defendants to issue a mortgage loan.

58. Defendants originated the loan in a way that was not in compliance with West Virginia law.

59. The Defendants serviced the loan in a way that was not in compliance with West Virginia law, including charging amounts that were not allowed by contract.

60. The contract was unconscionable under all circumstances alleged at the time it was made and/or induced by unconscionable conduct, and therefore is unenforceable.

61. Plaintiffs were financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

## COUNT IV

### *UNJUST ENRICHMENT*

62. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

63. The Defendants were unjustly enriched by the payments Plaintiffs made in excess of the amount actually owed under contract.

64. Plaintiffs were financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

## COUNT V

### *VIOLATIONS OF RESPA*

65. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

66. On or about January 29, 2020, the Plaintiffs sent a qualified written request (hereinafter "QWR") for information and notice of error to the Defendants US Bank and Caliber under the provisions of RESPA.

67. Plaintiffs further sent a qualified written request for information to HSBC on December 23, 2019.

68. The written dispute sent to Defendants US Bank and Caliber disputed the calculation of the differential interest lump amount and requested further information about how it was accounted.

69. Plaintiffs' notice of error was sent in conformity with Regulation X § 1024.35.

70. The Defendants did not fix the accounting on the differential interest lump amount as requested in the notice of error.

71. As a result of the Defendants' error, Plaintiffs have paid to the Defendants amounts that are not correct and which are higher than they should be, resulting in out-of-pocket harm to the Plaintiffs.

72. Plaintiffs were financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

### COUNT VI

*RECOUPMENT PURSUANT TO BANKRUPTCY CODE*

73. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

74. The Defendants did obtain funds from the Plaintiff through Chapter 13 payments for the purposes of paying arrearage and differend interested amounts on the Plaintiff's mortgage loan.

75. Upon information and belief, the Plaintiff's mortgage loan balance is calculated incorrectly, including the deferred interest balance.

76. As a result of the Defendants' error, Plaintiffs have paid to the Defendants amounts that are not correct and which are higher than they should be, resulting in out-of-pocket harm to the Plaintiffs.

77. Plaintiffs were financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

## DEMAND FOR RELIEF

Plaintiffs demand from the Defendants:

a. Plaintiffs' cost of litigation, including attorney fees, court costs and fees, pursuant to *West Virginia Code* §46A-5-104;

b. The Plaintiffs be awarded actual damages for the Defendants' acts as a result of Defendants' conduct in all of the Counts of the Complaint;

c. Actual damages equivalent to the amount paid plus the amount claimed due under the loan, and incidental and consequential damages;

d. Statutory damages in the maximum amount authorized by *West Virginia Code* §46A-6-101 et seq;

e. Plaintiffs' cost of litigation, including attorney fees, court costs and fees, pursuant to *West Virginia Code* §46A-6-101 et seq;

f. The Court declare the loan and lien on the Plaintiffs' property is unlawful for the origination of the loan was in violation of *West Virginia Code* § 31-17-2;

g. Equitable relief declaring the loan void for being originated in violation of *West Virginia Code* § 31-17-2;

h. Actual damages for all violations of RESPA as allowed 12 U.S. Code § 2605(f)(1)(A);

i. Statutory damages for each violation of RESPA pursuant to 12 U.S. Code § 2605(f)(1)(B);

j. Attorney's fees and costs pursuant to 12 U.S. Code § 2605(f)(3);

k. Recoupment of overpaid mortgage payments amounts under the bankruptcy code;

l. Injunctive relief pursuant to this Court's powers under *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S. Ct. 2545, 2559, 61 L. Ed. 2d 176 (1979);

11

m. The Plaintiffs be granted general damages and punitive damages for Defendants' conduct for each count where allowed by law;

n. Such other relief as the Court shall deem just and proper under the attendant circumstances.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

          **Robert Lee Gilmore,**
          **Reay Lynn Gilmore,**
          PLAINTIFFS, BY COUNSEL

BY:    /s/ Benjamin M. Sheridan
       Benjamin M. Sheridan (# 11296)
       *Counsel for Plaintiffs*
       Klein & Sheridan, LC
       3566 Teays Valley Road
       Hurricane, WV 25526
       (304) 562-7111
       Fax: (304) 562-7115